## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

UNITED STATES OF AMERICA,  )
           )
      v.    )  2:20-cr-00175-1
           )
           )  Chief Judge Mark R. Hornak
DEVIN MONTGOMERY,    )
           )
     Defendant.  )

### OPINION

**Mark R. Hornak, Chief United States District Judge**

Before the Court is Defendant Devin Montgomery's Motion to Dismiss Count One (ECF No. 236) of the Second Superseding Indictment (ECF No. 221). For the reasons explained below, the Court will DENY Defendant's Motion to Dismiss Count One.

## I. BACKGROUND

Defendant's Motion to Dismiss seeks dismissal of Count One of the Second Superseding Indictment, which charges Defendant with "maliciously damag[ing] and destroy[ing], by means of fire, and attempt[ing] to damage and destroy by means of fire, a vehicle, namely, an unmarked Ford police vehicle, which vehicle was leased and possessed by the City of Pittsburgh Bureau of Police, an institution and organization receiving Federal financial assistance," in violation of 18 U.S.C. § 844(f)(1). (ECF No. 221, at 1.) Count Two of that charging document charges Defendant with bank burglary in violation of 18 U.S.C. §§ 2 and 2113(a) (*id.* at 2) and is not at issue in Defendant's Motion to Dismiss.

The original Indictment (ECF No. 19) and the Superseding Indictment (ECF No. 62) in this case described the City of Pittsburgh Bureau of Police ("PBP")[1], which is alleged in the Second

---

[1] This Opinion refers specifically to the "PBP" as the entity which allegedly leased and possessed the property that the Second Superseding Indictment charges Defendant with damaging and destroying, because it is the entity

Superseding Indictment to have leased and possessed the vehicle that Count One charges Defendant with damaging and destroying, as "*an organization* receiving Federal financial assistance" (emphasis added), rather than "*an institution and organization* receiving Federal financial assistance" (emphasis added) as the Second Superseding Indictment states. Defendant previously filed a Motion to Dismiss Count One of the Superseding Indictment (ECF No. 193) in which he argued that the PBP is not "an organization receiving Federal financial assistance," specifically that the PBP is not an "organization" according to the meaning of that term in 18 U.S.C. § 844(f)(1). (ECF No. 194, at 4.)

In its Response to the prior Motion to Dismiss, the Government addressed that Motion on the merits—arguing that the PBP is an "organization" within the scope of § 844(f)(1)—and also stated that the Government would "likely be seeking to amend or supersede the Superseding Indictment in this case by adding the words 'and institution' to describe the [PBP] . . . in the charging language," which the Government said would "likely render th[e] issue [in the prior Motion] moot." (ECF No. 210, at 5.) The Court ordered the Government to file a supplemental brief regarding the prior Motion to Dismiss and the Government's Response to explain whether and if so when the Government intended to amend or supersede the Superseding Indictment and how such would resolve the issues with the charge at Count One that the Motion asserted. (ECF No. 219.)

The Government then filed the Second Superseding Indictment—which describes the PBP as "an institution and organization receiving Federal financial assistance" (ECF No. 221, at 1)—along with the supplemental brief ordered by this Court, in which the Government reiterated its

---

described in the Second Superseding Indictment in the charge at Count One. As the parties acknowledge, the PBP is a constituent entity of the City of Pittsburgh. Thus, while "PBP" as used in this Opinion specifically refers to the police bureau, it also generally refers to the City of Pittsburgh, and in the discussion of whether the charged conduct at Count One is within the scope of 18 U.S.C. § 844(f)(1), "PBP" refers to both the City of Pittsburgh and its police bureau.

view that the PBP is an "organization" and which also argued that the PBP is an "institution" (ECF No. 228, at 1–3). After submitting those filings, the Government moved to dismiss the original Indictment and the Superseding Indictment (ECF No. 234, at 1); the Court granted that Motion (ECF No. 235) and also dismissed the prior Motion to Dismiss Count One of the Superseding Indictment without prejudice (ECF No. 239). The Second Superseding Indictment is the presently operative charging document.

On April 6, 2022, Defendant filed the pending Motion to Dismiss Count One (ECF No. 236) of the Second Superseding Indictment, reiterating his assertions as to why the PBP is not an "organization," and arguing that the PBP is also not an "institution," as those terms should be interpreted, according to Defendant, in the context of § 844(f)(1) (*see* ECF No. 237, at 2–9). On May 4, 2022, the Government filed its Response opposing the Motion (ECF No. 241), and on May 17, 2022, Defendant filed his Reply (ECF No. 243).

The Court held oral argument on that Motion on June 9, 2022 (*see* ECF No. 248), after which the Court ordered each party to file a supplemental brief addressing legal principles, which as the Court explains below, then appeared to the Court to be relevant to Defendant's Motion and which counsel had not yet addressed (ECF No. 249, at 1–3). Defendant and the Government filed those briefs on July 6 and July 7, 2022, respectively. (ECF Nos. 255, 256.)

On July 25, 2022, the Court received and docketed for case participants a letter from Defendant in which Defendant (1) requested that the Court order Defendant's then-counsel to withdraw from the case and appoint new counsel and (2) expanded upon the arguments his then-counsel had advanced in support of the Motion to Dismiss, asserting that his counsel "had excluded very persuasive information that [Defendant] provided him . . . for the [M]otion to [D]ismiss." (ECF No. 263.) At the request of Defendant's then-counsel, the Court held a video status

conference on July 28, 2022, with Defendant, his then-counsel, and counsel for the Government to address Defendant's representation status. (ECF No. 266.) The Court then set an in-person status conference, which occurred on August 2, 2022, during which Defendant made an oral motion to represent himself in his case moving forward. (ECF No. 272.) After an extensive colloquy with the Defendant, the Court granted Defendant's oral motion to proceed *pro se* and in response to the Defendant's request, set deadlines by which Defendant was permitted to file any further supplements in support of his Motion to Dismiss and by which the Government and Defendant could file a Response and Reply, respectively. (ECF No. 273.)

Defendant then filed a supplement in support of his Motion to Dismiss, docketed on August 10, 2022, in which he asked the Court to dismiss Count One of the Second Superseding Indictment for the reasons he stated in his July 25, 2022, letter (ECF No. 263). (ECF No. 277, at 1–2.) Defendant also asserted that the counsel who represented him when the Motion to Dismiss was filed erred in the arguments originally submitted in the Motion (arguments that the Court explains below). (*Id.* at 2.) On August 11, 2022, the Government filed its Response to Defendant's supplement, which stated: "The government's response is to hereby incorporate the government's prior responses filed at Doc. Nos. 210, 228, 241[,] and 256." (ECF No. 278, at 2.) The Court received and docketed Defendant's Reply that Response on August 24, 2022. (ECF No. 281.)

The Defendant has now, with leave of Court, changed course and has decided that he will be represented by his current counsel of record going forward. That counsel was given the opportunity to further supplement the record as to this Motion, and after consultation with the Defendant, has advised the Court that the Court should proceed on the papers as are currently filed.

The present Motion to Dismiss is therefore now ripe for disposition.

4

## II.    <u>LEGAL STANDARD</u>

Federal Rule of Criminal Procedure 12(b)(3)(B) provides that a defendant may file a motion before trial to dismiss an indictment based on a defect in the indictment. As relevant here, "[t]he sufficiency of an indictment may be challenged . . . on the ground that the specific facts alleged . . . fall beyond the scope of the relevant criminal statute, as a matter of statutory interpretation." *United States v. McGeehan*, 584 F.3d 560, 565 (3d Cir. 2009) (citations and internal quotation marks omitted), *vacated on other grounds*, 625 F.3d 159 (3d Cir. 2010).

Thus, to resolve Defendant's Motion to Dismiss on the basis that "the specific facts alleged . . . fall beyond the scope of the relevant criminal statute"—*i.e.*, on the basis that the vehicle allegedly damaged and destroyed by Defendant was leased or possessed by the PBP, an entity that Defendant argues is not an "organization" or "institution" within the scope of § 844(f)(1)—this Court must engage in statutory interpretation of § 844(f)(1).

"As in all cases in which we interpret a statute, . . . we look first to its language, giving the words used their ordinary meaning. In addition to the statutory language at issue, we consider the specific context in which that language is used, and the broader context of the statute as a whole." *Pellegrino v. U.S. Transp. Sec. Admin.*, 896 F.3d 207, 216 (3d Cir. 2018) (citations and internal quotation marks omitted), *reversed in part on other grounds,* 937 F.3d 164 (3d Cir. 2019) (en banc). Dictionary definitions are a useful starting point for ascertaining the ordinary meaning of a statute's language, before a court also proceeds to consider, as it must, the context of the language and the statute. *See Yates v. United States*, 574 U.S. 528, 537 (2015). Other tools of statutory interpretation, including legislative history, may be useful to assess the meaning of an ambiguous statute, *see, e.g.*, *id.* at 542; however, the Third Circuit "has declined to employ legislative history

if a statute is clear on its face" and when "the text tells the tale," *Pellegrino*, 937 F.3d at 179 (citations and internal quotation marks omitted).

## III.   <u>DISCUSSION</u>

The Court's discussion of the issues raised in, and the Court's resolution of, the pending Motion to Dismiss proceeds as follows. First, the Court describes the arguments that Defendant advanced through prior counsel in his counseled Motion to Dismiss and briefing in support of that Motion (Section A.). Second, the Court describes the Government's response to those counseled briefs (Section B.). Third, the Court discusses the issues on which the Court sought counsel's input following oral argument on the Motion and the briefing that counsel for Defendant and for the Government provided as to those issues (Section C.). Fourth, the Court describes the additional arguments and sources in support of his Motion to Dismiss that Defendant advanced and identified in the supplemental briefing that he filed directly with the Court and not via counsel, which the Court treated as an additional filing in support of Defendant's Motion after this Court granted Defendant's request to proceed *pro se* (Section D.). Finally, the Court analyzes the arguments that Defendant and counsel have advanced throughout the pendency of this Motion as to how the Court should resolve the Motion (Section E.).

### A.   <u>Defendant's Arguments via Prior Counsel</u>

Defendant first argues that the PBP is not an "organization" according to the meaning of that term in § 844(f)(1). In sum, Defendant asserts that "organization" as used in § 844(f)(1) is defined as "a person other than an individual," and that "person" does not include sovereign entities and thus does not include the PBP, which is an entity of the City of Pittsburgh. (*See* ECF No. 237, at 2–6.)[2]

---

[2] As this Opinion explains, characterizing the City of Pittsburgh as a "sovereign entity" for these purposes is inaccurate.

Defendant argues that "organization" in § 844(f)(1) is defined as "a person other than an individual" because 18 U.S.C. § 18 states that "[a]s used in this title [*i.e.*, Title 18], the term 'organization' means a person other than an individual." (*Id.* at 2; ECF No. 243, at 2–3.) For the definition of "person," Defendant cites to two statutes: (1) 1 U.S.C. § 1—also known as the Dictionary Act—which states that "[i]n determining the meaning of any Act of Congress, unless the context indicates otherwise . . . the word[] 'person' include[s] corporations, companies, associations, firms, partnerships, societies, and joint stock companies, as well as individuals"; and (2) 18 U.S.C. § 841(a), which states that as used in Chapter 40 of Title 18 (where § 844(f)(1) appears), "'[p]erson' means any individual, corporation, company, association, firm, partnership, society, or joint stock company." (ECF No. 237, at 2–3, 5.) Reading 18 U.S.C. § 18, 1 U.S.C. § 1, and 18 U.S.C. § 841(a) together suggests that an "organization" is a corporation, company, association, firm, partnership, society, or joint stock company—*i.e.*, a person other than an individual. (*See id.*)

Defendant then argues that the PBP, as a constituent entity of the City of Pittsburgh, is not a "person" at all because there is a "longstanding interpretive presumption that 'person' does not include the sovereign." (*See* ECF No. 237, at 3 (quoting *Return Mail, Inc. v. U.S. Postal Serv.*, 139 S. Ct. 1853, 1861–62 (2019)).) As *Return Mail* points out, the Dictionary Act's definition of "persons" as "corporations, companies, associations, firms, partnerships, societies, and joint stock companies, as well as individuals"—"unless the context indicates otherwise"—is a legislative directive of that interpretive presumption because "notably absent" from that list of types of persons is sovereign entities such as the federal government. 139 S. Ct. at 1862. (*See* ECF No. 237, at 3.)

While the Supreme Court explained in *Return Mail* that the presumption that sovereign entities are not "persons" may be disregarded "upon some affirmative showing of statutory intent to the contrary," 139 S. Ct. at 1862, Defendant argues that no such showing exists when it comes to 18 U.S.C. § 844(f)(1). First, as noted above, 18 U.S.C. § 841(a), which applies to § 844(f)(1), defines "person" the same way as "person" is defined in the Dictionary Act—which Defendant says essentially codifies the presumption that sovereign entities, or at least the federal government, are not "persons," *see Return Mail*, 139 S. Ct. at 1861–62. (ECF No. 237, at 5.) Second, the text of § 844(f)(1) includes "the United States, or any department or agency thereof, or any institution or organization receiving Federal financial assistance" as the entities whose property interests are protected by the statute; Congress's specific inclusion of "the United States, or any department or agency thereof" suggests that Congress could have included other governmental entities (*e.g.*, state and/or local governments) within the scope of the statute but purposefully did not. (*Id.*) Defendant cites to another criminal statute, 18 U.S.C. § 666(a)(1), that includes as an element of the offense "being an agent of an organization, or of a State, local, or Indian tribal government, or any agency thereof," in support of his assertion that Congress explicitly includes such governmental entities within the scope of statutes when it intends to do so. (*Id.*)

In addition to asserting that the PBP is not an "organization" within the scope of § 844(f)(1), Defendant argues that the PBP is not an "institution" either. Noting that "institution" is not defined anywhere in the United States Code, Defendant states that the Court is "require[d] . . . to look elsewhere, such as Merriam-Webster," to define the term, which is consistent with what Defendant says is the Supreme Court's approach of "frequently cross-referenc[ing] dictionary definitions to ascertain ordinary meaning of statutory text that does not arise in a technical context." (*Id.* at 6.) Defendant then cites to a Merriam-Webster definition of an "institution" as "an

established *organization or corporation* (such as a bank or university) especially of a public character." (*Id.* at 7 (emphasis added).) The PBP is not an "institution" within the scope of § 844(f)(1), Defendant argues, because (1) it is not an "*organization*" for the reasons Defendant sets out and as explained above, and (2) it is not a "*corporation*" because it has none of the hallmark features of a corporation—it is not independent, it lacks an executive board that manages it, and it is not subject to majority public ownership. (*See id.* at 7–9.)[3]

### B.   The Government's Arguments in Response to the Counseled Motion

The Government argues that the PBP is both an "organization" and an "institution" as those terms are used in 18 U.S.C. § 844(f)(1). As to whether the PBP is an "organization," the Government disagrees with Defendant's assertion that § 18—which defines "organization" as "a person other than an individual"—applies to § 844(f)(1). (ECF No. 241, at 3.) Because § 844(f)(1) was enacted before § 18 was enacted, the Government argues, the Court should give the term "organization" in § 844(f)(1) its ordinary meaning as of the time of the statute's enactment (*i.e.*, 1970), without regard for the definition of "organization" in § 18. (*Id.* at 1–3.) However, the Government does not expound on what the "ordinary meaning" of "organization" was in 1970. (*See id.* at 3.) The only evidence that the Government provides of what "organization" meant in 1970, when the statute was enacted, is legislative history from the enactment of § 844(f)(1) that year, specifically a congressional report that states: "[t]his section also protects real and personal property belonging to institutions and organizations receiving Federal financial assistance such as universities, hospitals, and police stations." (*Id.* at 2 (citing H.R. Rep. No. 91-1549, at 38–39 (1970).)

---

[3] Defendant's argument that the PBP is not a corporation focuses on the fact that the PBP is not independent, specifically because the City of Pittsburgh, as a home-rule municipal entity, derives all of its power solely from the Pennsylvania General Assembly, and then argues that it "may only do those things which the General Assembly has expressly or by necessary implication placed within its power to do." (ECF No. 237, at 8–9.)

The Government argues in the alternative that even if "organization" in § 844(f)(1) has the meaning provided for in § 18 (*i.e.*, "a person other than an individual")—in which case, the definition of "organization" would include a reference to the term "person"—the PBP still qualifies as an organization for two reasons. First, the Government asserts that the PBP is an "organization" because it is an "association," which is included in the definition of "person" in 1 U.S.C. § 1 and 18 U.S.C. § 841(a); however, the Government does not explain *why* the Court should conclude that the PBP is an "association." (ECF No. 241, at 3.) Second, the Government argues that *Return Mail* undermines Defendant's argument because that case emphasized that the presumption that a sovereign entity is not a "person" can be overridden by consideration of the full "text or context of the statute." (*Id.* at 3–4.) The Government asserts that the text and context of § 844(f)(1) demonstrates Congress's intent to include sovereign entities in the definition of "person," and thus in the definition of "organization," because: (1) inclusion of the word "institution," which the PBP qualifies as for reasons explained in the Government's Response, in the phrase "institution or organization" suggests that Congress did not intend to limit the scope of § 844(f)(1) to the extent Defendant suggests; and (2) the legislative history of § 844(f)(1) indicates that the PBP is the type of entity whose property interests Congress sought to protect through the statute. (*Id.*)[4]

Further, the Government states that "[a]t least three other Circuit Courts have upheld convictions of defendants who argued that state or local government agencies did not satisfy the definition of organization under Section 844(f)(1)." (*Id.* at 4 (citing *United States v. Apodaca*, 522

---

[4] In its Response to the prior Motion to Dismiss Count One of the Superseding Indictment, the Government asserted that "the clear purpose of Section 844(f)(1) is to protect the property and financial interests of the sovereign United States Government," including entities that receive federal financial assistance, which is confirmed by the fact that the phrase "institution or organization" was added back into the statute in 2002 and the suggestion in the legislative history of that 2002 amendment that the goal was to expand protection of federal financial interests in the wake of the September 11, 2001 terrorist attacks. (ECF No. 210, at 3–4.)

F.2d 568 (10th Cir. 1975); *United States v. Elliott*, 684 F. App'x 685 (10th Cir. 2017); *United States v. Davis*, 98 F.3d 141 (4th Cir. 1996); *United States v. York*, 600 F.3d 347 (5th Cir. 2010)).)[5]

Finally, the Government contests the first part of Defendant's argument that the PBP is not an "institution," contending that Defendant's position is "unpersuasive" and stating as follows:

> [T]he defendant avers that, because the Merriam-Webster definition of 'institution' includes the word 'organization,' and because the PBP is not an 'organization' under Section 18, *Return Mail*, or 1 U.S.C. Section 1, then the PBP cannot be an institution under Section 844(f)(1). However, Merriam-Webster's use of the term 'organization' is of course not limited by Section 18, *Return Mail*[,] or Section 1.

(ECF No. 241, at 4–5.)

The Government does not address the second part of Defendant's argument that the PBP is not an "institution"—on the basis that, as Defendant contends, the PBP is not a "corporation"— noting that the Government "does not intend to establish jurisdiction or otherwise prove guilt on that basis." (*Id.* at 5.)

### C. <u>Order Directing Supplemental Briefing and Responses to Order</u>

As stated above, after the Court held oral argument on the pending Motion to Dismiss, the Court ordered the parties to file supplemental briefing in light of the matters advanced at the argument and the Court's continued consideration of those matters and the Motion. (ECF No. 249, at 3.) In that Order, the Court summarized legal principles that appear to apply to Defendant's Motion but that the parties had not yet addressed in their briefing or at oral argument, and the Court ordered the parties to file supplemental briefs to address those principles and their impact on Defendant's Motion. (*Id.*)

---

[5] As Defendant points out in his Reply in support of the pending Motion, the cases that the Government cites as finding that a defendant violated § 844(f)(1) when the entity receiving federal financial assistance was a state/local government entity did not involve the issue of whether the entity was an "institution" or "organization" as those terms are used in the statute, but rather were focused on either (1) whether the entity was one in receipt of federal financial assistance or (2) whether the entity was using the property alleged to be damaged or destroyed.

Specifically, the Court noted that while Defendant argues that the PBP is not an "organization" as the term is used in § 844(f)(1) because "sovereign entities" are not "persons" and thus the PBP is not a "person other than an individual," it appeared to the Court that under prevailing law, the City of Pittsburgh is not a "sovereign" entity, but is instead a constituent unit of local government established under the law of the Commonwealth of Pennsylvania—which, as a state, *is* generally considered to be a sovereign entity under federal law. (*Id.* at 1–2 (citing *Cmty. Commc'ns Co. v. City of Boulder*, 455 U.S. 40, 53–54 (1982)).) Further, it appeared to the Court that as a home rule municipality under Pennsylvania law, the City of Pittsburgh is a municipal corporation (*id.* at 2 (citing *In re Capra*, 693 A.2d 647, 651 n.7 (Pa. Commw. Ct. 1997))), and that municipal corporations, like non-municipal corporations, are considered to be legal "persons" under applicable law (*id.* (citing *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 687–88 (1978))). The Court observed that the Government had not contested Defendant's Motion on the basis that the City of Pittsburgh is not a sovereign entity. (*Id.* at 1.) Thus, a relevant question, but one that the parties had not yet addressed when the Court ordered supplemental briefing, seemed to be whether the City of Pittsburgh as a non-sovereign entity and municipal corporation is an "organization" (or an "institution") within § 844(f)(1)'s scope. (*Id.* at 2.)

Rather than address the topic the Court discussed in its Order, Defendant's supplemental brief focused on a different but parallel topic that the Court had also raised at oral argument—specifically whether a municipality's status as a "person" that can be liable under 42 U.S.C. § 1983 is relevant to or useful in determining whether the City of Pittsburgh is a "person" such that it is an "organization" under 18 U.S.C. § 844(f)(1). (*See* ECF No. 255, at 1–2.) Defendant stated that while the involved defense counsel did not have experience with § 1983 litigation, personhood under § 1983 "makes not one whit of difference in assessing whether [the PBP] is both a proper

'organization' and 'institution' in Section 844(f)(1) criminal litigation." (*Id.*.) Defendant's brief does not address any of the legal principles summarized in the Court's Order requiring supplemental briefing, aside from stating that "it's unclear why the [C]ourt has focused upon identifying the City of Pittsburgh as a municipal corporation when that conclusion is not a position taken by the [G]overnment" and when the Government has stated it will not seek to prove that the PBP is a "corporation." (*Id.* at 2.) Thus, Defendant's brief does not assist the Court in applying the specific principles the Court summarized in its Order, which as indicated in that Order appeared to the Court to be highly relevant to the issue central to the pending Motion to Dismiss, namely whether the City of Pittsburgh and/or the PBP are within the scope of "institution[s] [and] organization[s]" described in the relevant statute.

In contrast, the Government's brief specifically addressed the Court's observation in its Order that the City of Pittsburgh appeared under applicable law to be a municipal corporation, and the brief discussed the impact of that premise, if true, on Defendant's Motion. The Government reiterates its position that the definition of "organization" as "a person other than an individual," 18 U.S.C. § 18, does not apply to § 844(f)(1) but states that if the Court concludes otherwise, then the City of Pittsburgh's status as a municipal corporation would make it a corporation, and thus "a person other than an individual" given that a "corporation" can be a "person" per 1 U.S.C. § 1 and 18 U.S.C. § 841(a). (ECF No. 256, at 2–3.) The Government asserts that *Return Mail* would support that conclusion because it focused on the "notabl[e] absen[ce]" of the federal government from the list of types of persons in 1 U.S.C. § 1, and a "logical legal inference to be drawn from th[at] observation of the [Supreme] Court is that the 'notable presence' of 'corporations' in the definition of 'person' in Section 1 means that a municipal corporation, such as the City of Pittsburgh, *is* a person under Section 1." (*Id.* at 2.)

D. **Defendant's *Pro Se* Supplemental Filings and the Government's Response to Those Filings**

As noted above, after oral argument and the supplemental briefs that Defendant's then-counsel and the Government filed in response to the Court's request for such briefs, Defendant sought to have his prior counsel removed from his case and ultimately moved to represent himself, which the Court granted. (ECF Nos. 263, 273.) Defendant then filed a *pro se* supplemental brief in support of his Motion to Dismiss (ECF No. 277), in which he incorporated by reference the arguments he advanced in his letter to the Court (ECF No. 263) seeking a new representation.

In his *pro se* supplemental filings, Defendant "concedes that previous counsel erred by asserting that the City of Pittsburgh is a sovereign entity" (ECF No. 277, at 2), which was the basis for Defendant's former counsel's argument that the City of Pittsburgh and its police department are not organizations within the scope of § 844(f)(1) (*see* ECF No. 237). Defendant still contends, however, that the PBP is not an organization within the scope of § 844(f)(1) because the PBP is not a "person"—such that it is "a person other than an individual" as "organization" is defined in 18 U.S.C. § 18—for reasons other than those advanced by Defendant's former counsel.

First, Defendant argues that in determining whether the PBP is a "person," the Court should apply "the doctrine of *inclusio unius est exclusio alterius*," *i.e.*, "inclusion of one is the exclusion of another." (ECF No. 263, at 2.) Because the definition of "person" that appears in 1 U.S.C. § 1 and 18 U.S.C. § 18 includes "corporations, companies, associations, firms, partnerships, societies, and joint stock companies, as well as individuals," 1 U.S.C. § 1, but does not include "municipalities, municipal corporations, local governments, political subdivisions of states," and so forth, Defendant argues that the *inclusio unius est exclusio alterius* doctrine requires the Court to conclude those latter entities are not "persons" as defined in 1 U.S.C. § 1 and 18 U.S.C. § 18. (*Id.*) As support for this principle, Defendant cites to examples of statutes in which Congress has

14

specifically included municipalities and/or local governments in the scope of the statute—including 18 U.S.C. § 666(a), which Defendant's former counsel cited to in the counseled Motion, as well as 42 U.S.C. § 7602(e), 42 U.S.C. § 9601(21), 33 U.S.C. § 1362(5), and 33 U.S.C. § 2701(27). (*Id.* at 3.)

Second, Defendant directs the Court to cases in which courts have concluded that the definition of "person" as used in various statutes other than 18 U.S.C. § 18 does not include local municipalities. (ECF No. 263, at 6–10.) In *United States v. Belgarde*, the defendant was charged with violating 18 U.S.C. § 1153, in which the victim must be an "Indian or other person," and the court concluded that the Montana Department of Family Services was not a "person" as that term is used in § 1153. 148 F. Supp. 2d 1104, 1104–06 (D. Mont. 2001). In *Commonwealth v. Quaker Medical Care & Survivors Plan*, the Pennsylvania Department of Public Welfare argued that it was as "beneficiary"—*i.e.*, a designated "person . . . who is or may become entitled to a benefit under" an employee benefit plan, 29 U.S.C. § 1002(8)—under Section 502 of ERISA, 29 U.S.C. § 1132, which allows beneficiaries to bring civil actions for alleged ERISA violations. 836 F. Supp. 314, 315–16 (W.D. Pa. 1993). The court held that the Department of Public Welfare, as a state agency, was not a "person" and was thus not a "beneficiary" under the relevant statutes. *Id.* at 318. In *United States v. City of Rancho Palos Verdes*, the Ninth Circuit concluded that the City of Rancho Palos Verdes, a municipal corporation, was not a "person" under the Endangered Species Act (ESA). 841 F.2d 329, 330 (9th Cir. 1988). The ESA defined "person" as including "any officer, employee, agent, department, or instrumentality of the Federal Government, [or] of any State or political subdivision thereof"; the court disagreed that the defendant city was an "instrumentality" of the state (as the United States argued) because the city was a political subdivision of the state, and thus, concluding that it is also an "instrumentality" would render the

"political subdivision of" language in the ESA superfluous. *Id.* Finally, in *City of Clinton v. Pilgrim's Pride Corp.*, the court held that the City of Clinton was not a "person" under sections of the Packers and Stockyards Act, 7 U.S.C. § 181 *et seq.*, because while that statute's definition of "person" included "corporations," "[i]n common parlance, towns, cities and other municipal organizations are not [referred to] as corporations," and the other terms in the definition of "person" suggested that "person" referred to private entities. 653 F. Supp. 2d 669, 672–74 (N.D. Tex. 2009), *aff'd*, 632 F.3d 148 (5th Cir. 2010).

Defendant also cites two other potentially relevant cases: *City of Lincoln v. Ricketts* and *United States v. Ng Lap Seng*. (ECF No. 263, at 6–11.) Unlike *Belgarde*, *Quaker*, *City of Rancho Palos Verdes*, and *Pilgrim's Pride*, *Ricketts* is a case in which the deciding court (the Supreme Court) concluded that a municipal corporation *was* a "person" within the meaning of the statute at issue in the case—section 64b of the Bankruptcy Act—in which "[t]he word 'person' [wa]s expressly stated to include corporations." 297 U.S. 373, 374 (1936). The Court noted that "[a] municipal corporation is a corporation in the usual sense of the term," and that the Bankruptcy Code's definition of "corporation" "c[ould] [not] be taken to exclude municipal corporations." *Id.*[6] Defendant argues that *Ricketts* is significant because there, unlike with § 844(f)(1), the statute included "a definition of 'corporation' that cause[d] the term 'person' to encompass any legal entity with powers of privileges of a private corporation," such as municipal corporations. (ECF No. 263, at 9–11.)

---

[6] The definition of "corporations" in the Bankruptcy Act that the Court examined was "all bodies having any of the powers and privileges of private corporations not possessed by individuals or partnerships and shall include limited or other partnership associations organized under laws making the capital subscribed alone responsible for the debts of the association, joint stock companies, unincorporated companies and associations, and any business conducted by a trustee, or trustees, wherein beneficial interest or ownership is evidenced by certificate or other written instrument." *Ricketts*, 297 U.S. at 374.

*Ng Lap Seng* dealt with the meaning of "organization," rather than "person"; in that case, the Second Circuit held that "organization" as used in 18 U.S.C. § 666 "does not include governments or their constituent parts." 934 F.3d 110, 122 (2d Cir. 2019). The court concluded that while 18 U.S.C. § 18 (the Title 18-wide general definition of "organization") and 1 U.S.C. § 1 (the definition of "person" applicable in all Acts of Congress unless the context indicates otherwise) suggest that "the word 'organization,' whenever used in Title 18, applies broadly to all legal 'persons,' whether large or small, domestic or international, public or private, governmental or nongovernmental," "the context in which 'organization' is used in § 666 . . . signals some definitional narrowing." *Id.* at 123. That "narrowing" was "evident from the fact that the statute prohibits the solicitation or payment of bribes not only as to 'organization[s],' but also as to 'State, local, or Indian tribal government[s]' receiving federal funds. There would be no need to identify such government entities in § 666 if they were already among the legal persons covered by the word 'organization.'" *Id.* (citation omitted). Based on *Ng Lap Seng*, Defendant argues that "the word 'organization' . . . as defined by 1 U.S.C. § 1 and 18 U.S.C. § 18 applies to all non-governmental legal persons," and thus does not include an entity like the PBP. (ECF No. 263, at 6–7 (citing *Ng Lap Seng*, 934 F.3d at 127).)

Further, Defendant argues that *Monell*'s holding that "a municipality can be a 'person' held liable under 42 U.S.C. § 42" was reached "for multiple reasons that do not apply to 18 U.S.C. § 844(f)(1)." (*Id.* at 12.) "First, the definition of 'person' provided by the Dictionary Act at the time of Section 1983's enactment in 1871 differs from the definitions of 'person' that apply to 18 U.S.C. § 844(f)(1)." (*Id.* at 12–13.) In 1871, the Dictionary Act stated that "person" meant "bodies politic and corporate." (*Id.* at 13.) Second, the purposes of 42 U.S.C. § 42 and 18 U.S.C. § 844(f)(1) differ. While "Section 844(f)(1) was enacted pursuant to Congress's power under the Property Clause

with the purpose of protecting the property of the United States," "the purpose of Section 1983 . . . [was] to enforce provisions of [the] Fourteenth Amendment against those who carry badge[s] of authority such as a City of Pittsburgh Police officer." (*Id.* at 13–14 (citations and internal quotation marks omitted).)

In addition to Defendant making the above-summarized arguments as to why the PBP is not an "organization" as that term is used in § 844(f)(1), Defendant argues that the PBP is not an "institution" because it does not "provide services, food[,] and shelter for the individuals that reside at [a] facility such as a hospital, university[,] or jail," which appears to be the definition as used by Congress in other contexts, such as 42 U.S.C. § 1997(1). (ECF No. 277, at 4–5.) Further, Defendant argues that the Court should not define "institution" using *Merriam-Webster*'s definition because that definition is "extremely vague," and that even if the Court concludes that that definition applies, "the rule of lenity should apply." (*Id.*)

Finally, Defendant generally argues that the PBP cannot be included within the scope of the "institution[s] or organization[s]" identified in § 844(f)(1) because if such were the case, § 844(f)(1) would exceed Congress's power under the Property Clause of the U.S. Constitution. Specifically, Defendant asserts that Property Clause gives Congress "the power to dispose of and make all needful rules and regulations respecting the territory or other property belonging to the United States," and "Congress intentionally omitted property belonging to governments other than the United States from [§ 844(f)(1)] because it is beyond [its] powers enumerated by the Constitution to legislate in that area." (ECF No. 263, at 3–4 (quoting U.S. Const. Art. IV § 3 cl. 2).)

### E.  Analysis

For the reasons explained below, the Court first concludes that the PBP is both an "organization" and an "institution" within the scope of § 844(f)(1); in addition, the Court concludes that Defendant's Property Clause argument—specifically that including the PBP within the scope of § 844(f)(1) is unconstitutional because such would exceed Congress's power under the Property Clause—does not lead to the dismissal of Count One. Therefore, the Court will DENY Defendant's Motion to Dismiss Count One of the Second Superseding Indictment without prejudice.

### a. The PBP as an "organization"

#### i.  *"Organization" as used in § 844(f)(1) means "a person other than an individual"*

As to whether the PBP is an "organization" based on the meaning of that term in § 844(f)(1), the Court first identifies the applicable definition of "organization" as used in that statute. The parties disagree on this point: Defendant argues that the definition of "organization" as used in § 844(f)(1) is that which appears in 18 U.S.C. § 18, *i.e.*, "a person other than an individual," while the Government counters that § 18 does not apply to § 844(f)(1) and rather that the definition of "organization" as used in § 844(f)(1) is whatever its ordinary meaning was at the time § 844(f)(1) was enacted.

The Court concludes that § 18 applies to § 844(f)(1), such that "organization" as used in § 844(f)(1) means "a person other than an individual." There are two reasons for this conclusion. The first is the text of § 18: it unambiguously provides that "[a]s used in this title"—"this title" being Title 18—"the term 'organization' means a person other than an individual." Section 844(f)(1) appears within Title 18. Thus, the immediately apparent conclusion is that "as used in" § 844(f)(1), a section within Title 18, "the term 'organization' means a person other than an individual."

In the Court's estimation, the text of § 18 could be the end of the inquiry as to whether "organization" as used in § 844(f)(1) is defined as "a person other than an individual," because construing § 844(f)(1) in context, including its placement in Title 18, plainly indicates that § 844(f)(1) is subject to the Title 18-wide definition of "organization." *See Pellegrino*, 896 F.3d at 216 (explaining that words in a statute should be interpreted based on "the specific context in which th[e] language is used, and the broader context of the statute as a whole"); *see also Pellegrino*, 937 F.3d at 179–80 ("Here, [] the text tells the tale."). However, the Government argues that this Court should not apply § 18 to § 844(f)(1) at all because § 18 was enacted after § 844(f)(1)—which leads the Court to the second reason for concluding that § 18 provides the most logical definition of "organization" in § 844(f)(1).

Even if the Government is correct that § 18 may not always have been available to interpret the meaning of "organization" in § 844(f)(1), and assuming that this premise makes the text of § 844(f)(1) ambiguous, the Court observes, as the Government explains in opposing the Motion to Dismiss, that § 844(f)(1) was amended in 2002—after § 18 was enacted in 1986—such that the phrase "or any institution or organization receiving Federal financial assistance" was added back to the statute after having been removed in an earlier amendment. (ECF No. 241, at 2–3 (describing the amendments to § 844(f)(1) during its history).) When Congress added the word "organization" to the statute in 2002, it did so "against the backdrop of" § 18, which by that point had defined "organization" as "a person other than an individual" for 16 years. *See United States v. Andrews*, 12 F.4th 255, 260 (3d Cir. 2021), (concluding that when Congress reenacted a statute without any alterations to a preexisting statutory phrase and associated definition, it was reasonable for the district court to conclude that Congress intended the phrase to retain that established meaning), *cert. denied*, 142 S. Ct. 1446 (2022). Thus, even if Congress had originally intended "organization"

in § 844(f)(1) to mean something other than "a person other than an individual" (as the Government appears to suggest), Congress nonetheless freshly inserted the word "organization" into the statute in 2002 when there was then on the books a clear definition of "organization" that Congress had unambiguously stated applies to all of Title 18.

Not only does the text of § 18 unambiguously suggest that "organization" in § 844(f)(1) means "a person other than an individual," which the re-inclusion of "organization" in the statute after § 18 was enacted also indicates, but the Government has also not offered any alternative meaning of the term "organization." The Government suggests that the Court should define "organization" according to its "ordinary meaning" in 1970—but the Government offers little insight into what that ordinary meaning would have been or why. The Government points to a congressional report from 1970 when § 844(f)(1) was enacted to argue that "organization" must have at least included "universities, hospitals, and police stations" (ECF No. 241, at 1–2)—but even if that conclusion is true, it helps little in determining the "ordinary meaning" of "organization" because it simply provides a list of three types of entities, and defining "organization" using the definition in § 18 is not facially inconsistent with that list.

ii. ***"Person" in the phrase "a person other than an individual" means any "corporation, company, association, firm, partnership, society, or joint stock company"***

The Court next concludes that both 1 U.S.C. § 1 and 18 U.S.C. § 841(a) provide the correct definition of "person" to apply in further defining "organization" within the scope of 18 U.S.C. § 844(f)(1). Despite the Government's contention that 18 U.S.C. § 18 does not apply to 18 U.S.C. § 844(f)(1) at all—with which the Court disagrees—both parties appear to believe that 18 U.S.C. § 841(a) and 1 U.S.C. § 1 are the starting points for the meaning of "person," which is necessary to define to further break down the phrase "a person other than an individual." The Court agrees.

First, 1 U.S.C. § 1 applies to "[a]ny Act of Congress"—which 18 U.S.C. § 844(f)(1) is—and 18 U.S.C. § 841(a) applies to Chapter 40 of Title 18—where 18 U.S.C. § 844(f)(1) appears. Second, the definition of "person" in 1 U.S.C. § 1 is only inapplicable to Acts of Congress in which "the context indicates otherwise." The context of 18 U.S.C. § 844(f)(1) does not indicate otherwise, most significantly because the definition of "person" contained in 18 U.S.C. § 841(a) is identical to the definition in 1 U.S.C. § 1.

### iii.    *The PBP is an "organization" within the scope of § 844(f)(1) because it is "a person other than an individual"*

Having decided that "organization" as used in 18 U.S.C. § 844(f)(1) means "a person other than an individual" per § 18, and that "person" as used in that definition means "any individual, corporation, company, association, firm, partnership, society, or joint stock company," it follows that "organization" means a "corporation, company, association, firm, partnership, society, or joint stock company." For the reasons explained below, the Court concludes that the PBP falls within this definition.

The Court first addresses the argument on which Defendant's Motion to Dismiss was originally based: that the PBP is not an organization within the scope of § 844(f)(1) because it is a sovereign entity and sovereign entities are not "persons." The Supreme Court has explained that cities are not sovereign entities because while "the States possess a significant measure of sovereignty under our Constitution, . . . [o]urs is a *dual* system of government, which has no place for sovereign cities." *Cmty. Commc'ns Co.*, 455 U.S. at 53 (citations and internal quotation marks omitted). There are two sources of sovereign authority—"the Government of the United States" and "the States of the Union"—and "*[t]here exist within the broad domain of sovereignty but these two*," from which "cities, counties, and other organized bodies with limited legislative functions. . . . derive[]." *Id.* at 53–54 (internal quotation marks omitted) (quoting *United States v. Kagama*, 118

22

U.S. 375, 379 (1886)); *see N. Ins. Co. of New York v. Chatham Cnty.*, 547 U.S. 189, 193–94 (2006)

(distinguishing between states and arms of the state, on the one hand, and counties and

municipalities on the other, in the Eleventh Amendment context and explaining that states'

immunity from suit stems from their sovereign status and that counties and municipalities, even

though they "exercise a slice of state power," do not share that sovereign status and constitutionally

protected immunity from suit). This first principle on its own undercuts Defendant's earlier

argument as advanced through his former counsel that the PBP is not a "person," and thus is not

an "organization," on the basis that the definition of "person" in 1 U.S.C. § 1 does not include the

sovereign—since the PBP, as a constituent entity of the City of Pittsburgh, and the City itself, are

*not* sovereigns.

Rather, as Defendant and the Government appear to agree, the City of Pittsburgh is a home

rule municipality under Pennsylvania law, and thus is a municipal corporation. (*See* ECF Nos. 237,

at 7 ("Pittsburgh is a municipality governed by home rule."); 256, at 2 (discussing the City of

Pittsburgh as a "municipal corporation"); 277, at 2 ("Although the City of Pittsburgh is not a

sovereign, it is undoubtedly within the reach of statutes that include words such as . . .

'municipalities' . . . .").) *See In re Capra*, 693 A.2d at 651 n.7 (listing 56 cities, 19 of which are

home rule, as among the 2,571 municipal corporations in the Commonwealth as of 1997); *Home*

*Rule Charter*, The City of Pittsburgh, https://apps.pittsburghpa.gov/redtail/images/16954_

2021_home_rule_updated_7-30-21.pdf (last visited Mar. 1, 2023) (describing the duties of the city

solicitor as "act[ing] as attorney for the City as a municipal corporation").

In addition, as the Court stated in its Order requesting supplemental briefing from the

parties following oral argument, the Supreme Court's decision in *Monell* can also be read to

suggest that as a municipal corporation, the City of Pittsburgh is considered to be a legal person.

(ECF No. 249, at 2.) In *Monell*, the issue before the Supreme Court was whether municipalities, or municipal corporations, could be "persons" under 42 U.S.C. § 1983, and the Court examined its prior precedents in holding that municipalities are "persons" under § 1983. 436 U.S. at 687–88. Specifically, prior to 1871, the year in which § 1983 was enacted, the Supreme Court had decided *Louisville, Cincinnati, & Charleston Railroad Co. v. Letson*, 43 U.S. 497 (1844) and *Cowles v. Mercer County*, 74 U.S. 118 (1868); in *Letson*, the Supreme Court had stated that "a corporation created by and doing business in a particular state, is to be deemed to all intents and purposes as a person," and "in *Cowles v. Mercer County*, the *Letson* principle was automatically and without discussion extended to municipal corporations." *Monell*, 436 U.S. at 687–89. Thus, the Supreme Court concluded in *Monell* that by 1871, "it was well understood that corporations [and municipal corporations] should be treated as natural persons for virtually all purposes of constitutional and statutory analysis." 436 U.S. at 687. *See United States v. Pittman*, 600 F. Supp. 3d 597 (E.D.N.C. 2022), *appeal filed*, No. 22-4463 (4th Cir. Aug. 15, 2022).

In *Ricketts*, the Supreme Court stated that "[a] municipal corporation is a corporation in the usual sense of the term," 297 U.S. at 374—a principle that is consistent with the discussion in *Monell*. While Defendant cites to *Ricketts* for a different purpose, he appears to dispute that principle as stated in *Ricketts* because he cites to *Pilgrim's Pride Corp.* and states that in that case, the district court stated that "[i]n common parlance, towns, cities and other municipal organizations are *not* [referred to] as corporations." (ECF No. 263, at 9–10 (emphasis added) (citing 653 F. Supp. 2d at 674 (briefly listing "cases [that have] conclude[d] that, in ordinary usage, the term 'corporation' does not refer to a municipality")).)

The district court in *Pilgrim's Pride Corp.* acknowledged *Ricketts* and the Supreme Court's holding there that a city was a "corporation" and thus a "person" under the Bankruptcy Act, but it

distinguished *Ricketts* and concluded that a city was not a "corporation" and not a "person" under the Packers and Stockyards Act because *Ricketts* contained a definition of "corporation" that "causes the term 'person' to encompass any legal entity with the powers or privileges of a private corporation." 653 F. Supp. 2d at 673–74. Because the Packers and Stockyards Act contained no such definition, the court reasoned that it needed "to give th[e] term ['corporation'] its plain meaning." *Id.* at 674. And as that court held, the "plain meaning" of corporation does not include municipal corporations. *Id.*

In this Court's estimation, *Pilgrim's Pride Corp.* does not indicate that this Court should conclude that a municipal corporation is not a "corporation" as that term is used in the definition of "person" at 1 U.S.C. § 1. While *Pilgrim's Pride Corp.* tries to distinguish *Ricketts* on the basis that the statute at issue in *Ricketts* had a definition of "corporation" that suggested that a municipal corporation is a "corporation," *Ricketts* was not decided solely on that basis. Rather, the Supreme Court stated in *Ricketts* that "[a] municipal corporation is a corporation in the usual sense of the term," and it only looked at the Bankruptcy Act's text to confirm whether that Act used the term "corporation" in a more limited sense than that usual definition. 297 U.S. at 374. None of the statutes involved here that are relevant for determining whether the PBP is an "organization" as that term is used in § 844(f)(1) contain a definition of "corporation" that suggests that the term should not be understood to include "municipal corporations," as the Supreme Court has stated as a broader principle of federal law and which it has not overruled.

Applying precedent from the Supreme Court to ascertain the meaning of "corporation," and considering whether the term includes municipal corporations, the Court concludes that the City of Pittsburgh (including its constituent entities such as the PBP) is a "corporation." Because the City of Pittsburgh is a "corporation," it is a "person" based on the plain language of 1 U.S.C.

§ 1 and 18 U.S.C. § 18—and thus, the City is an "organization" under 18 U.S.C. § 844(f)(1), to which 1 U.S.C. § 1 and 18 U.S.C. § 18 apply.

The other cases to which Defendant cites in his *pro se* submissions do not persuade the Court that the PBP is not a "person" and thus not an "organization" under the applicable statutes. While *Ng Lap Seng*, like this case, also involved a criminal statute (18 U.S.C. § 666) within Title 18, and while the court concluded that "organization" as used in that statute had a more limited meaning than "a person other than an individual," its conclusion was based on the other language within § 666 that it viewed as warranting a narrower reading of "organization." As the Second Circuit explained in *Ng Lap Seng*, § 666 "prohibits the solicitation or payment of bribes not only as to 'organization[s],' but also as to 'State, local, or Indian tribal government[s]' receiving federal funds dealt with the meaning of 'organization.'" 934 F.3d at 123. Under *Gregory v. Ashcroft*, 501 U.S. 452 (1991), "Congress must speak with particular clarity when its intent is to constrain traditional state authority to order its own government." *Ng Lap Seng*, 934 F.3d at 126. The Second Circuit wrote that "[i]t is because statutory text making explicit Congress's intent to reach certain governments cannot be superfluous that we construe the word 'organization' not to reach governments, state or otherwise." *Id.* at 128.

These circumstances—inclusion of language such as "State, local, or Indian tribal governments" within the definition of "person" that would become superfluous if "person" included municipalities, and an issue of statutory interpretation that could implicate the holding of *Gregory*—are not present in this case. The operative definition of "person" (which is used to define "organization") is limited to 18 U.S.C. § 841(a), 1 U.S.C. § 1, and the statute at issue, § 844(f)(1), does not involve "state authority to order its own government," but rather seeks to protect property with a nexus to the federal government as discussed below.

Nor do the decisions in *Belgarde* and *Quaker* persuade the Court that a municipality is not a "person." The entities involved in those cases were *state* agencies—the Montana Department of Family Services, and the Pennsylvania Department of Public Welfare, respectively. 148 F. Supp. 2d at 1005; 836 F. Supp. 314. States are sovereigns; in fact, the court in *Quaker* based its conclusion that the state agency was not a "person" on the presumption that sovereign entities are not "persons." 836 F. Supp. at 318. This case, however, involves a non-sovereign entity—the City of Pittsburgh, including its constituent police force.

In sum, the Court concludes that the PBP is an "organization" within the scope of § 844(f)(1) because "organization" in § 844(f)(1) means "a person other than an individual," and as a constituent entity of the City of Pittsburgh, the City (and the PBP) is a municipal corporation and as such is deemed a "person" in the legal context. Since the PBP is an "organization," the Second Superseding Indictment is not deficient, as Defendant argues, by alleging facts (*i.e.*, identifying the vehicle in Count One as one leased and possessed by the PBP) that are not within the scope of § 844(f)(1) (which protects property interests of organizations receiving federal financial assistance).

### b. The PBP as an "institution"

The Court also concludes that the PBP is an "institution" within the scope of § 844(f)(1). Defendant asserts that "institution" is not defined anywhere in the United States Code, and the Government does not contest that point. The Court concludes that Defendant appears to be correct that no general statutory definition of the term "institution" on its own—*i.e.*, separate from more specific phrases such as "financial institution" and "penal/correctional institution," or definitions of "institution" as applicable to specific statutes, e.g., 42 U.S.C. § 1997, which Defendant cites— is applicable to all Acts of Congress and/or to the statute at issue (*i.e.*, 18 U.S.C. § 844(f)(1)),

appears to exist. Thus, the Court must consult other sources, such as dictionary definitions, and must also consider the context of the language and the statute, to decipher the ordinary meaning of the term "institution" and its meaning in § 844(f)(1). *See Pellegrino*, 896 F.3d at 216; *Yates v. United States*, 574 U.S. at 537 (2015) (beginning with dictionary definitions to determine the meaning of terms in a statute and also considering the statute's context to determine if the dictionary definitions match the statutory usage of the terms); *see, e.g.*, *In re Rodriguez*, 319 B.R. 894, 897 (Bankr. M.D. Fla. 2005) (interpreting the term "nonprofit institution," "in the absence of a Bankruptcy Code definition," based on "its plain everyday dictionary meaning" and consulting Merriam-Webster's Collegiate Dictionary and Black's Law Dictionary).

The Court begins with the Merriam-Webster definition of "institution"— considering both the present-day definition, which Defendant initially identified in his counseled briefing,[7] and the definition from 1970, when § 844(f)(1) was enacted. The present-day definition of an "institution" is "an established organization or corporation (such as a bank or university) especially of a public character." (ECF No. 237, at 7 (citing *Institution*, *Merriam-Webster*, https://www.merriam-webster.com/dictionary/institution (last visited Mar. 1, 2023)).) While Defendant in the counseled briefing begins the analysis of whether the PBP is an "institution" within the present-day definition, that analysis then deviates from the source of that definition to argue that the PBP does not fit that definition.

First, Defendant states that the PBP is not an "organization" as that term is used within the Merriam-Webster definition of "institution" for the same reasons Defendant argues that the PBP is not an "organization" for purposes of § 844(f)(1). (*Id.*) In other words, Defendant looks beyond the United States Code for the definition of "institution" by referring to the dictionary, but then

---

[7] The Court acknowledges that Defendant may have abandoned such arguments by his prior counsel in his *pro se* submissions, but because Defendant does not say so explicitly, the Court discusses them here.

refers back to the United States Code, as well as case law that Defendant argues interprets sections of the Code (such as *Return Mail*), to define a term ("organization") within the dictionary definition of "institution." The Court is unpersuaded by that line of reasoning because referring to a non-dictionary source to understand a dictionary definition muddles the exercise of determining the dictionary definition, and ultimately the ordinary meaning in everyday usage, of the term at issue. Second, Defendant then argues that the PBP is not a "corporation" as included in the Merriam-Webster definition of "institution" because it lacks certain characteristics of corporations (*e.g.,* an executive board and majority public ownership), but the authority from which Defendant draws those characteristics is unclear. (*See id.* at 7–9.)

In his *pro se* submissions, Defendant also asserts that "the definition of institution provided by [the] *Merriam[-]Webster* dictionary is extremely vague." (ECF No. 277, at 4.) However, Defendant has not elaborated on why this definition is "vague," and the Court is not even certain of which definition from *Merriam-Webster* Defendant refers to, as he does not provide one. Finding none of Defendant's arguments as to why the PBP cannot be considered an "institution" availing, the Court proceeds from the 1970 definition, from when § 844(f)(1) was enacted, to determine whether the PBP is an "institution".

The dictionary definition of "institution" in 1970 was "an organization, establishment, foundation, society, or the like, devoted to the promotion of a particular object, esp. one of a public, educational, or charitable character." *Institution*, *The Random House Dictionary of the English Language* 737 (Jess Stein ed., 1970). Because that definition incorporates the terms "organization" and "establishment" the Court next considers the 1970-definitions of "organization" and "establishment" to ascertain their ordinary meanings at the time § 844(f)(1) was enacted. In 1970, "organization" was defined as "a body of persons organized for some end or work." *Organization*,

*The Random House Dictionary of the English Language* 1014 (Jess Stein ed., 1970).

"Establishment" was defined as "a permanent civil, military, or other force or organization."

*Institution*, *The Random House Dictionary of the English Language* 487 (Jess Stein ed., 1970).

Considered against those definitions, the City of Pittsburgh, and specifically the PBP, plainly constitutes part of the municipal authorities of a city, *i.e.*, "a permanent. . . force" that is "devoted to the promotion of a particular object" that is of a "public" character. Thus, it appears that the PBP is an "institution," at least in the sense that it is an "establishment" or an "organization" based on dictionary definitions of those terms from 1970, which help the Court determine the ordinary meaning of those terms in the absence of specific statutory definitions.

The context of § 844(f)(1), which the Court must also consider to determine the meaning of "institution," readily supports this interpretation of the term. Facially, the focus of § 844(f)(1) is protecting the property interests of entities that "receive federal financial assistance." As the Court noted at oral argument, some of the primary, though not the only, recipients of federal financial assistance are state governments, which in turn funnel federal funding to local governments that carry out certain functions on behalf of local communities within the particular state. And to the extent the City received such funding directly, this analysis applies with even greater force. Thus, the PBP, as a city police force, appears to be at least one type of entity within the scope of § 844(f)(1).

Accordingly, the Court concludes that while "institution" is not generally defined in a statute that applies to § 844(f)(1), the ordinary meaning of "institution," based on its dictionary definition and the context of the § 844(f)(1), demonstrates that the PBP is an "institution" within the scope of § 844(f)(1).[8] Since the PBP is an "institution," the Second Superseding Indictment is

---

[8] Even if the Court concluded that the PBP is not an "institution," the Second Superseding Indictment is not deficient for describing the PBP as "an institution *and* organization receiving Federal financial assistance" (ECF No. 221, at 1

not deficient, as Defendant argues, by alleging facts (*i.e.*, identifying the vehicle in Count One as one leased and possessed by the PBP) that are not within the scope of § 844(f)(1) (which protects property interests of institutions receiving federal financial assistance).

### c. <u>Whether § 844(f)(1) as applied to Defendant violates the Property Clause</u>

Defendant notes in his *pro se* supplemental briefing that inclusion of the PBP as an "institution or organization" within the scope of § 844(f)(1) would make the statute unconstitutional because in that instance it would exceed Congress's power under the Property Clause of the Constitution. (ECF No. 263, at 3–4, 17.) In making that argument, the Defendant cites to no caselaw, and relies on a broad generalized assertion that Congress cannot be presumed to legislate relative to any property other than property owned by the federal government. (*Id.* at 17; ECF No. 277, at 9). The Government in response referenced its prior filings, which included citation to cases considering and rejecting Property Clause challenges to § 844(f)(1). (ECF No. 278 (citing ECF No. 241, at 3–4).)

As Defendant notes, Congress enacted § 844(f)(1) pursuant to its powers under the Property Clause. (*Id.* at 3.) *See United States v. Hersom*, 588 F.3d 60, 62 (1st Cir. 2009) (citing H.R. Rep. No. 91-1549 (1970), *as reprinted in* 1970 U.S.C.C.A.N. 4007, 4046); *United States v. Brown*, 384 F. Supp. 1151, 1155 (E.D. Mich. 1974), *reversed on other grounds*, 557 F.2d 541 (6th Cir. 1977). For the reasons explained below, the Court concludes that Defendant's challenge to Count One of the Second Superseding Indictment on these grounds will be denied.

---

(emphasis added))—a suggestion that prior defense counsel made at oral argument on the pending Motion. "It is settled law that an offense may be charged conjunctively in an indictment where a statute denounces the offense disjunctively. Upon the trial the government may prove and the trial judge may instruct in the disjunctive form used in the statute." *United States v. Murph*, 707 F.2d 895, 896–97 (6th Cir. 1983) (citing *United States v. Niederberger*, 580 F.2d 63 (3d Cir. 1978), *cert. denied*, 439 U.S. 980 (1978)). Thus, the conjunctive phraseology in the Second Superseding Indictment characterizing the PBP as both "an institution and organization"—despite the statute's disjunctive language, *i.e.*, "an institution or organization"—does not require the Government to ultimately prove that the PBP is both an institution and an organization, and the Court's conclusion that the PBP is an organization and/or an institution within the scope of § 844(f)(1) brings the conduct alleged in Count One within the statute's scope.

The provisions of § 844(f)(1) and their intersection with the Property Clause have been recently examined by other courts, also. In *United States v. Lung'aho*, No. 4:20-cr-288-DPM-1, 2022 WL 10716767 (E.D. Ark. Oct. 18, 2022), *appeal filed*, No. 22-3168 (8th Cir. Oct. 20, 2022), the court addressed a challenge similar to that seemingly raised here in a case involving the firebombing of several vehicles used by a local police force. In *Lung'aho*, the court held that the § 844(f)(1) charge in that case could not be sustained under the Property Clause alone because the police cars which were burned were not federal property, nor paid for directly or indirectly via federal funds. *Id.* at *2. But, the *Lung'aho* court went on to deny the motion to dismiss the charge, concluding that the statute would be sustained under the combination of the Constitution's Necessary and Proper and Spending Clauses. *Id.* at *2, 3.

A similar result was reached by the court in *Pittman*. There, the charges involved the destruction by fire and explosives of a building owned and occupied by the City of Fayetteville, North Carolina. 600 F. Supp. 3d at 598. In *Pittman*, the court rejected a challenge to the prosecution on the basis that there was an insufficient nexus between the City's ownership and use of the building and the provision of federal funding, and instead held that the statute itself provided the requisite nexus between the legitimate federal interests under the Property Clause and the provisions of § 844(f)(1) by making the charge dependent on the destruction of property that was owned or possessed by an entity that was the recipient of federal funds. *Id.* at 598–602. The *Pittman* court also noted that this analysis and outcome was in accord with other courts considering the same issue in the context of a Property Clause challenge. *Id.* at 600 (citing *United States v. Elliott*, 684 F. App'x 685, 696 (10th Cir. 2017); *United States v. York*, 600 F. 3d 347, 354 (5th Cir. 2010); *United States v. Laton*, 352 F. 3d 286, 296 n.9 (6th Cir. 2003); *United States v. Davis*, 98 F. 3d 141, 144 (4th Cir. 1996)).

And in *United States v. Elliott*, the Tenth Circuit applied existing Circuit precedent, *United States v. Apodaca*, 522 F. 2d 568 (10th Cir. 1975), to conclude that the Property Clause's support for § 844(f)(1) was fulfilled by the limitations of the statute itself, namely that the property damaged by arson be owned, used or occupied by an entity receiving federal financial assistance. 684 F. App'x at 696–97.

A more nuanced examination of this Property Clause argument was provided by the court in *Hersom*, in which the First Circuit considered a challenge to the constitutionality of § 844(f)(1) as applied to the defendant in that case. The defendant there was charged with arson of real property owned by a private company that received financing to renovate the property from the city, with such financing consisting of funds obtained through a grant to the city from the federal Department of Housing and Urban Development. 588 F.3d at 62. Hence, there was a more attenuated relationship between the federal financial assistance and property involved (property under private ownership).

The defendant in *Hersom* argued that "to pass constitutional muster, section 844(f) must be interpreted as applying only to property owned, possessed, or leased by the United States [or] its departments and agencies, and property owned, possessed, or leased by 'federal instrumentalities,' *i.e.*[,] institutions or organizations 'substantially funded by the federal government and effectuating a specific Congressional purpose.'" *Id.*

The First Circuit explained that the Supreme Court "has held that the Property Clause authority," which Congress invoked to enact § 844(f)(1), "is not so limited," and that "Congress may properly enact legislation under the Property Clause power governing the conduct of third parties with respect to property not owned, possessed, or leased by the United States, its agencies,

or its instrumentalities where such regulation is necessary to protect property acquired from the federal government." *Id.* at 63 (citing *Ruddy v. Rossi*, 248 U.S. 104, 106–07 (1918)).

In defining the parameters of § 844(f)(1), including what entities and what property are included in the statute's scope, the *Hersom* court first considered other statutes and cases analyzing the term "Federal financial assistance" and concluded that such term "generally refers to entities receiving federal funds—directly or indirectly—so long as [they are] the intended recipient[] of the federal legislation providing the assistance." *Id.* at 65. Thus, an "institution or organization receiving Federal financial assistance" per § 844(f)(1) means an institution or organization that is an intended beneficiary of federal funds. The *Hersom* court then discussed "whether the statute applies to arson of all property owned or possessed by the organization receiving federal financial assistance," and it concluded that (1) "[i]n the case of an organization whose operations are substantially or primarily funded by the federal government, . . . the statute [most likely] applies to all of the organization's property," and (2) "in the case of organizations receiving federal financial assistance related to specific property, . . . section 844(f) [i]s limited in general to arson of that particular property." *Id.* at 65–67. But the *Hersom* court also noted it "d[id] not foreclose the possibility that the statute should be construed to apply in some limited instances to non-federally funded property where federal interests are implicated, for example, because the proximity of the federally funded and non-federally funded property creates a risk of injury to federal property from arson as to the non-federal property." *Id.* at 67.

In *Brown*, the district court explored another set of circumstances in which § 844(f)(1) is a constitutional use of Congressional power under the Property Clause: those in which a recipient of federal funding does not use such funds for the purpose of acquiring property, but rather to assist in the performance of federal government functions or carrying out of federal programs. 384 F.

Supp. at 1158–60. While the Property Clause does not generally allow Congress to legislate to protect general local government operations, including as to the property of such entities—since the Property Clause power only applies when the federal government has "some actual and substantial property interest" that it seeks to protect—as noted by the court in *Pittman*, the Necessary and Proper Clause allows Congress to legislate "to protect entities which are engaged in government functions." *Id.* at 1157–58; *see id.* at 1160 ("Congress must have the means to protect those institutions it is currently funding to carry out federal programs if those programs are to be economically or expeditiously carried out."). Thus, the *Brown* court denied the defendant's motion to dismiss an indictment count that charged the defendant with bombing a Planned Parenthood Clinic because while "the government has no property interest in the Planned Parenthood League, nor in any of the League's property," Planned Parenthood "provide[d] facilities in furtherance of an announced national goal" and received federal funds "to carry out [a] federal program." *Id.* at 1152, 1157–59. The Sixth Circuit then "affirm[ed] the constitutionality of § 844(f) . . . for the reasons stated in the District Court's opinion" in *Brown*. 557 F.2d 541, 559 (6th Cir. 1977).

In considering the analysis of these cases, the Court concludes that they stand for the principle that under § 844(f)(1), and consistent with Congress's authority under the Property Clause as it may be implemented via the Necessary and Proper and Spending Clauses, Congress may broadly establish criminal penalties for individuals who damage or destroy by arson, fire, or explosives property owned or possessed by, or leased to, entities receiving federal financial assistance. Even under the narrower standards stated in *Hersom*, § 844(f)(1) at minimum would also apply when the entities used funds flowing from such assistance for any of the following: (1) to acquire substantially all of their property; (2) to acquire (in whole or in part) the property that

was damaged or destroyed; (3) to acquire property other than that which was specifically damaged or destroyed but which has a tangible nexus or proximity to federally funded property such as property that is used to further or implement a program for which federal financial assistance is provided; or (4) to administer a federally funded program.

Thus, even under the narrower analysis in *Hersom*, to obtain a conviction under Count One, the Government would only be required to prove any one of the factual circumstances as described above. In other words, that such federal financial assistance was used in whole or in part to acquire all of the entity's property, *or* the property that was damaged or destroyed, *or* property that has a nexus to federally acquired property or to the property or programs which are the target or result of federal financial assistance, *or* to help to effectuate a federally-funded program. And, for these purposes, the court concludes that the relevant entities would be either or both the City and its police bureau.

In this case, Count One of the Second Superseding Indictment charges that the Defendant's conduct damaged or destroyed a vehicle leased and possessed by "the City of Pittsburgh Bureau of Police, an institution and organization receiving Federal financial assistance." (ECF No. 221, at 1.) As charged, the entity utilizing the federal financial assistance was not simply the City as a whole, but its police bureau. Thus, as charged it would appear that the requisite nexus between the vehicle that was destroyed and the receipt of federal financial assistance exists. (*See* Government's Response, ECF No. 241 at 3 ("[T]his statute [§ 844(f)(1)] was intended to cover the property of police agencies that receive Federal financial assistance. The PBP is clearly such a police agency.").)

Consequently, whether considered under either the broader analysis of cases including *Elliott*, *Lung'aho*, and *Pittman*, or the arguably more restrictive analysis in *Hersom*, the Court

concludes that the charge at Count One withstands the very generalized Property Clause challenge mounted by the Defendant.

The Court will deny Defendant's Motion to Dismiss Count One.

## IV.   **CONCLUSION**

Having considered the arguments advanced by the parties and the applicable law, the Court concludes that the PBP is "an institution and organization receiving Federal financial assistance" within the scope of § 844(f)(1) such that Count One of the Second Superseding Indictment in this case alleges a crime within the scope of the criminal statute involved. For the reasons also stated above, the Court also concludes that the Defendant's Property Clause argument does not result in the dismissal of the charge at Count One. Accordingly, the Court will DENY Defendant's Motion to Dismiss Count One (ECF No. 236) of the Second Superseding Indictment.

An appropriate Order will issue.

s/ Mark R. Hornak
Mark R. Hornak
Chief United States District Judge

Dated: March 1, 2023